**FIRST WISCONSIN MORTGAGE TRUST, a Massachusetts Business Trust, Plaintiff,**

v.

**FIRST WISCONSIN CORPORATION, a Wisconsin Corporation, et al., Defendants.**

**Civ. A. No. 75–C–127.**

United States District Court, E. D. Wisconsin.

Nov. 16, 1976.

L. C. Hammond, Jr., Samuel J. Recht, Milwaukee, Wis., Bernard Nussbaum and Otis H. Halleen, Chicago, Ill., for plaintiff.

David E. Beckwith, Milwaukee, Wis., for defendants.

REYNOLDS, Chief Judge.

In this action brought under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.106–5, the plaintiff complains of the conduct of the various defendants in connection with the underwriting and administration of certain Participation Agreements. The matter is now before the Court on the plaintiff's motion to disqualify the defendants' counsel. In support of its motion, the plaintiff has submitted the affidavits of George H. Kline, Bernard J. Nussbaum, Gerald J. Sherman, the supplemental affidavit of Gerald J. Sherman, and accompanying exhibits. In opposition to the motion, the defendants have submitted the affidavits of Hal C. Kuehl, Jere D. McGaffey, and David Shute with accompanying exhibits. Oral argument was had on September 24, 1976. For the reasons hereinafter stated, the motion will be granted.

Due to the past relationship among the parties and their common counsel, it is necessary to set forth the facts in some detail.

The plaintiff is a real estate investment trust ("Trust") that was sponsored by the defendant First Wisconsin Corporation ("FWC") and established on November 3, 1971. The Trust was advised on its investments by the defendant First Wisconsin Mortgage Company ("Adviser") which is a wholly-owned subsidiary of FWC. The Adviser was staffed by employees of the Mortgage Loan Division of the defendant First Wisconsin National Bank ("Bank"), also a subsidiary of FWC. The Trust was established to provide investors with an opportunity to invest in a portfolio of mortgage and real property investments.

The law firm of Foley & Lardner served as general counsel to the Trust, FWC, the Adviser, and the Bank from November 3, 1971 until September 4, 1974, when it withdrew as general counsel for the Trust. On

February 1, 1974, the Trust retained the Chicago law firm of Sonnenscheim, Carlin, Nath and Rosenthal as special counsel to represent the Trust in connection with loans to borrowers in financial difficulty.

While operating as general counsel for the Trust and at the same time as general counsel for the FWC, the Adviser, and the Bank, Foley & Lardner's legal work consisted, among other things, of advising the Trust respecting securities and tax matters, listing of the Trust's shares on the New York Stock Exchange, filing of proxy statements, periodic reports to the Securities and Exchange Commission, review of public releases, and tax advice with respect to tax qualifications as a real estate investment trust ("REIT"). In addition to rendering these legal services, Foley & Lardner, as general counsel for FWC, the Adviser, and the Bank, performed legal work in connection with the creation of the Trust. In particular, on the advice of Foley & Lardner, the Declaration of Trust establishing the structure of the Trust was adopted. This Declaration was essentially patterned after those in widespread use in the REIT industry and suggested by the consulting firm of David C. Cates and Co. Among other things, the Declaration determined the constitution of the Trust. Also on the advice of Foley & Lardner, the Advisory Agreement defining the relationship between the Trust and its investment Adviser was adopted. The Agreement, like the Declaration, was patterned after those in widespread use in the REIT industry. Foley & Lardner also drafted the standard form Participation Agreements used by the Bank and the Trust when they participated in real estate loans. These Agreements defined the relationship between the Bank and the Trust with regard to specific loans. Finally, Foley & Lardner attended and kept the minutes of all the Trustees' meetings, at which meetings the Adviser recommended investments and the Trustees decided whether the Trust would accept the recommendations.

The parties entered into numerous loan transactions. One of those transactions included a loan to Jack P. DeBoer & Associates. The Bank was the lead lender on most of the DeBoer loans, and the Trust participated in a number of them.

During early 1975, at a meeting between Bernard J. Nussbaum of the Sonnenschein firm and David Beckwith of Foley & Lardner, Mr. Beckwith asked for the Trust's consent to Foley & Lardner's representation of the instant defendants in any litigation with the Trust. This action was filed on March 12, 1975. In a letter dated March 14, 1975, Foley & Lardner requested the consent of the Trust to its representation of the defendants. The letter provides in pertinent part as follows:

> "We have advised you previously that after careful examination we have concluded that Foley & Lardner as a firm can represent First Wisconsin Corporation, First Wisconsin Mortgage Company and First Wisconsin National Bank of Milwaukee in the action that has been * * * filed in the United States District Court for the Eastern District of Wisconsin by First Wisconsin Mortgage Trust, providing that the Mortgage Trust consents to our representation of the defendants. * * * [W]e have concluded that, with the consents of the Mortgage Trust and each of the defendants, there is no ethical or other prohibition that precludes us from representing the defendants in the action."

The Trust refused to give its consent.

Other pertinent facts will appear in the course of the Court's decision.

In support of Foley & Lardner's disqualification, the plaintiff advances several contentions: (1) that Foley & Lardner engaged in significant prior representation of the Trust on matters that bear a substantial relation to the subject matter of the pending suit; (2) that continued representation is a violation of general counsel's fiduciary duty to the plaintiff; (3) continued representation of the defendants creates an appearance of impropriety; and (4) that members of Foley & Lardner may be called to testify.

The defendants respond with the contentions that the legal services provided to the Trust by Foley & Lardner did not consist of advice on the proper underwriting and administration of loans by the Adviser until special counsel had been obtained for the Trust; that complete disclosure of the potential conflict to the Trust at the time of its creation permits it to continue; that it should be allowed to defend any attacks on its legal advice; that no confidentiality is involved; and that a plaintiff cannot disqualify counsel simply by calling its members adversely.

*Marketti v. Fitzsimmons*, 373 F.Supp. 637, 639 (W.D.Wis.1974), sets forth the general rule as to when counsel should be disqualified:

"* * * Absent a clear waiver of objection to potential conflicts, the undivided fidelity owed a former client requires disqualification in the subsequent situation whenever the following criteria are satisfied:

"' . . . (1) the former representation, (2) a substantial relation between the subject matter of the former representation and the issues in the later lawsuit, and (3) the later adverse representation.' *E. F. Hutton & Co. v. Brown*, 305 F.Supp. 371, 394 (S.D.Tex.1969) * *."

There is no dispute as to the former representation and the later adverse representation. Therefore, the issues before the Court are the waiver of objections to potential conflicts and the substantial relation between the subject matter of the former representation and the issues in this lawsuit. The Court will address itself first to the waiver issue.

The Court in *E. F. Hutton & Company, Inc. v. Brown*, 305 F.Supp. 371, 398 (S.D.Tex.1969), said:

"The obligation to search out and disclose potential conflicts is placed on the attorney in order to put the client in a position to protect himself by retaining substitute counsel if he so desires. * * *"

The defendants argue that Foley & Lardner fulfilled its obligation by disclosing in the prospectus potential conflicts between the parties with respect to competition for various accounts for opportunities to make real estate investments. This, however, was disclosure of potential business conflicts. The record does not indicate that at any time prior to Foley & Lardner's appointment as general counsel for the Trust the Trust was informed of the legal implications of the potential conflicts. Foley & Lardner had this duty.

"As heretofore indicated, it was the duty of counsel to call to the attention of both Hutton and Brown the existence and legal implications of any potential conflict of interest. Receipt of such advice would be *the bare minimum predicate for a waiver* by Brown of his right to object to a subsequent adverse representation. * * *" *E. F. Hutton*, supra, at 400. (Emphasis added.)

It is the finding of this Court that one of the legal implications of the potential conflicts was the possibility that Foley & Lardner would withdraw from its representation of the Trust and choose to continue representing the defendants in litigation with the Trust. Foley & Lardner failed to disclose this possibility to the Trust at the time of its establishment. In order for the Trust to have waived its objection to Foley & Lardner's representation of the defendants, it had to have been made aware of this possibility.

As indicated by the rejection of the consent request of March 14, 1975, the Trust did not subsequently waive its objections to Foley & Lardner's representation of the defendants in the instant suit.

This brings the Court to the issue of whether Foley & Lardner's prior representation of the Trust relates substantially to the subject matter of this suit.

The pertinent allegations in the complaint are as follows: the defendants failed to disclose material information to the Trust relating to the Trust investments; the Trust was improperly constituted; the defendants breached the obligations and

duties imposed on them by their contractual relationships with the Trust; and due to the interlocking relationships and affiliations of the parties, the defendants owed fiduciary duties to the Trust, which duties they breached. Each of these allegations involve Foley & Lardner's prior representation of the Trust while at the same time representing FWC, the Bank, and the Adviser.

The Advisory Agreement provided that the Adviser would originate investment opportunities for the Trust, advise the Trust with respect to investments and investment policy, and administer the day-to-day operations of the Trust, subject to the supervision of the Trustees. In particular, the Agreement as set forth in the prospectus dated December 14, 1971, at page 17, provides that:

"* * * [T]he Adviser will under the Advisory Agreement: (i) originate, investigate and evaluate investment opportunities and recommend them to the Trust; (ii) serve as the Trust's investment and financial adviser, including recommending changes in the Trust's investment policies when appropriate, and provide research, economic and statistical data in connection with the Trust's investments and investment and financial policies; * * * (iv) consult with the Trustees and furnish the Trustees with advice and recommendations with respect to the making, the acquiring, the holding and the disposition of investments; * * *."

These obligations were imposed by the document drafted by Foley & Lardner as part of the legal services it furnished the Trust while acting as the Trust's general counsel and at the same time acting as general counsel for FWC, the Bank, and the Adviser. The Trust now claims that the defendants failed to meet these obligations.

Foley & Lardner, as part of the legal services it furnished the Trust, was present at the meetings when the Adviser consulted with the Trustees and furnished them with advice and recommendations with respect to the making, the acquiring, the holding, and the disposition of the investments. The defendants now assert as an affirmative defense that the Trust is estopped from making its claim, because if it had wanted more information presented at the meetings, all it had to do was to ask, and, by implication, the defendants contend that if more information were needed, Foley & Lardner as general counsel would have so advised the Trust.

The Declaration of Trust provided for the constitution of the Trust. In providing legal services to the Trust, Foley & Lardner drafted the Declaration. The plaintiff now claims that the Trust was improperly constituted.

The Participation Agreements created the contractual relationships that imposed certain duties on the defendants. As part of the legal services it provided the Trust, Foley & Lardner drafted the standard form Participation Agreement. The plaintiff now claims that Foley & Lardner's clients— the FWC, the Adviser, and the Bank— breached the duties imposed by this Agreement.

The parties had an interlocking relationship with one another. The Adviser and the Bank are subsidiaries of FWC. The Adviser was staffed by employees of the Mortgage Loan Division of the Bank. The Trust was advised by the Adviser. At one time seven of the Trust's thirteen Trustees were connected with either the Adviser, the Bank, the FWC, or Foley & Lardner. Foley & Lardner represented all these parties during the period of their affiliation. The Trust now claims that this affiliation created fiduciary duties that the defendants have breached.

The defendants refuse to concede that the above-stated involvement of Foley & Lardner substantially relates to the subject matter of this suit. They define the central issue presented by the suit as the underwriting and administration of particular loans. The contention is that since Foley & Lardner allegedly did not engage in the underwriting and administration of particular loans, they should not be disqualified. They further contend that Foley & Lardner merely drafted the Advisory Agreement and standard form Participation Agree-

**498**

ment, and its draftsmanship is not being challenged.

It is not clear that Foley & Lardner was not involved in the administration of particular loans which are the subject matter of this suit. In his affidavit, David Shute, a partner at Foley & Lardner, admits involvement in the "work-out" of a loan to Jack P. DeBoer & Associates. (Shute Affidavit ¶ 4) According to Gerald J. Sherman of the Sonnenschein firm, the DeBoer loans are among the loans for which claims are made. (Sherman Affidavit ¶ 4)

■ Regardless of Foley & Lardner's involvement or noninvolvement in the administration of particular loans, the Court finds that its prior representation does substantially relate to the subject matter of the suit. By characterizing this suit as one challenging the underwriting and administration of particular loans, the defendants have unjustifiably narrowed the focus of the Trust's complaint. The Trust complains that the defendants failed to fulfill the obligations imposed on it by the Advisory Agreement, the Participation Agreements, and the affiliations of the parties. As part of its service to the Trust, Foley & Lardner drafted the documents that gave life to the Trust and defined the nature and extent of its obligations. Such prior services are substantially related to a suit involving the very definition of the obligations and Foley & Lardner cannot now represent the parties who allegedly have injured the Trust by breaching those obligations.

For the foregoing reasons,

IT IS ORDERED that the plaintiff's motion is granted, and that Foley & Lardner be and it hereby is disqualified from representing the defendants in the instant action.